The opinion of the Court was delivered by
Withers, J.
We have given to this cause such degree of anxious consideration as propérly belongs to one involving such momentous consequences, embracing not merely what concerns the prisoners, on the one hand, but something of what concerns the reasonably prompt application of public justice, on the other. We have been able to detect no mistake in the instructions given to the jury, or in any ruling upon questions of evidence upon any of the grounds, impeaching it, that have not been obviated by the report. It is quite unnecessary, therefore, to enter into the discussion of matters, derived from such grounds of appeal as the topics of argument here. It is also proper to say, that the resolution of the jury of the whole evidence, as to the guilt of the prisoners, does not present anything which would justify this Court in interposing, by the exercise of its high discretion in capital cases, *264 between tbe verdict of tbe jury and its most grave consequences.
Tbe subject wbicb must be discussed and adjudged, arises upon tbe first ground taken, to wit, that in relation to tbe right of tbe prisoners to a copy of tbe indictment three days before tbe trial.
Tbe 43d sec. of an Act of 1731, 3 Stat. 286, after reciting, (among other things,) that innocent persons, under criminal prosecutions, may suffer, from ignorance of tbe laws, as not knowing howto make a just defence, enacts, that “all persons that shall be accused and indicted for high treason, petit treason, murder, felony, or other capital offence whatsoever, shall have a true copy of tbe whole indictment, but not tbe names of tbe witnesses, delivered to them, or any of them, three days, at least, before be or they shall be tried for tbe same, whereby to enable them, or any of them, respectively, to advise with counsel thereupon, bis or their attorney or at-tornies, agent or agents, or any of them, requiring the same, and paying tbe officer bis reasonable fees for writing thereof, paying the usual fees for tbe copy of every such indictment.”
Tbe first question is, at what time, at tbe latest, must tbe prisoner, or bis representative, “require” tbe said copy, upon pain of being held to a waiver of tbe right ?
There seems to be no period, when this musí be done, so suitable as that of arraignment. Of course application may be made at any time before, or a copy may be tendered tbe prisoner before. It is perfectly clear, that three days are peremptorily granted to tbe prisoner to use a copy of tbe indictment on tbe business of preparing for bis “ trial,” and arranging tbe means of showing what is called bis “just defence.’’ There may be instances, where a prisoner is not arrested and may not know even that an indictment has been preferred and found against him, and notwithstanding be may be captured and instantly arraigned. In many cases, especially *265 those in which, a prisoner is unable to employ counsel, obscure and friendless, though he be incarcerated in the jail of the district where the indictment is found, he is yet as little able to have any sufficient knowledge of proceedings, as if he were beyond seas. Upon arraignment, the indictment is read to him: it may be bunglingly done, and he, in the confusion of terror and shame, dull of apprehension, wholly unlettered; but he is thus formally accused of what touches his life, and such occasion presents the earliest period at which we can be sure he can hear it and have any knowledge of its contents, for the first time. We do not think it safe, therefore, to fix a rule that shall compel a prisoner, charged capitally, to submit to a computation of the three days granted from a period anterior to that of arraignment.
The next question is, shall we consider what occurred at the arraignment of these prisoners, in conjunction with others, as equivalent to a requisition of the copy of the indictment ? The presiding Judge did not so consider it. It is to be regretted, that the counsel who raise the question, had not been more explicit, or that a clearer understanding, of what they affirm was meant, had not been given to the Court.
Winningham and Miller do not occupy the same position in the particular now considered. Upon the arraignment none of the five prisoners, except the former, referred to the right in question, though the others were represented by chosen counsel, and he had to appeal for the like benefit, to the favor of the Court, guarranteed (as it is) by the same section of the aforesaid Act. Miller, with three of the others, moved and obtained a bench warrant for witnesses represented to be absent and material; that, undoubtedly looked to atrial, and this would have been impossible, during the time, if Miller meant to insist upon the privilege, now in contemplation, which the statute accorded to him, though a copy of the indictment might also have been demanded in perfect consistency with such a motion to secure witnesses if the time had *266 been sufficient. It was Thursday, however, and the three days would have ended with the term. Winningham said he was not ready for trial, and insisted upon a continuance, upon the ground, that he was “ allowed to have a copy of the indictment three days before the trial.” A continuance beyond the current term was denied. This occurred in the presence of the other prisoners, and we have no means of knowing whether Miller and his counsel may have been then silent, ■ as to a continuance or a copy, and failed to make a point in relation thereto, in consequence of what was addressed by the Court to Winningham’s case. So it was, nothing was said as to that matter, on the part of Miller, until all were produced for trial, when Miller and the rest took the same ground that Winningham had taken upon arraignment. Touching Win-ningham’s case a majority of the Court feel constrained to say, that what he did, being, as we have said, at the right time, or the suitable time, for that purpose, should have been regarded as “ requiring” a copy of the indictment. The statute seems to be solicitous to secure this privilege, as one of consequence in the vindication of innocence, and though we are far from expressing the opinion that the present is such a case, yet it is not safe to be too exact in the interpretation of what is, for the most part, hastily done on circuit, to the exclusion of what the law considers a material right in such cases as this, and we cannot venture to place Winningham’s right, under the law, upon what we might conclude as to his manifest guilt. The right is in no degree dependent upon the special qualities of any case. It is considered fit and proper, that the right in question should' be exercised in open Court, and upon arraignment; whereupon an order (which sometimes may be necessary to effectuate the object) can be made obligatory upon the clerk, to be executed upon the condition that the prisoner, his agent or attorney, pay the fees, as provided by law. This would shut out all contest or ambiguity, as to whether the demand was made and when made; so that the computation *267 of time can. be attended by accuracy. It would be unsatisfactory, tbat one whose life is imperiled should fail to obtain a copy of the record, where it was demanded in good faith, by reason of inability to pay the fees. It is, perhaps, not likely to occur; but, however that may be, the law must have its course.-
We have a case, overlooked in this discussion, and unpublished when the State v. Quarral, 2 Bay, 152, and the Same v. Fisher, 2 N. & McC. 264, were decided. It was adjudged in 1794, anterior to the earliest of those two, and is the case of the State v. Gray Briggs, 1 Brev. 8. The indictment was for horse stealing: the prisoner was arraigned on Thursday, (as in the case before us,) and demanded, under the same Act of 1731, a copy of the indictment, and three days to prepare for trial; was produced for trial on the Monday following, objected that the three days had not expired, because Sunday, which was non-juridical, was one of these, citing 4 Burr. 2130, and 1 Dallas, 327. Sed joer Curiam, Waties, J. — “ The rule with respect to time is, to include the day on which the motion is made. The computation of time must commence from the time when the motion was made. The whole day must be included, because there can be no fractions of a day.” However this resolution may conflict with judicial interpretation, of good repute, English and American, we must accept it as good authority for us, and the more readily since it may aid to withdraw what would otherwise prove a great impediment to the course of speedy public justice, in consideration of short terms, and great pressure of dockets. Two points are determined directly or inferentially: 1, that arraignment is the proper time, not too late at any rate, to demand a copy of the indictment : 2, that the day of the motion shall be reckoned as one day of the three allowed. With alacrity in the finding of the bill and prompt arraignment, the last position may serve to diminish the hazard of that delay' of public justice towards *268 tbe innocent, or towards great offenders, as the case may be, which may ensue in many cases, as the matter is, from demanding a copy of the indictment at a term restricted to six days for all kinds of business, and the first day devoted to the summary process docket. But the right is clear; it may prove of vast consequence in some cases, we are not to say in which, however we may suspect, that in the present instance it is of little consequence upon the merits. If the evil be such as we fear it may prove to be, a remedy can be applied by the legislature by reducing the term of three days. As the matter of right is beyond our discretion or control, it must be conceded to Winningham, ex debito justicim.
The diversity in Miller’s case has been pointed out. Claiming, as already said, a matter of strict, naked, legal right, which when due we cannot withhold, and when not due we ought not to concede to a case in which we are confident clear justice has been administered, a majority of us have been driven to the conclusion, that in strictness, Miller waived his right to claim the benefit (if any there be) to be derived from the Act of 1731. We have encouragement to say so from what is said in the two cases above cited, from 2 Bay, & 2 N. & McO., as well as in the observations of Judge Story, in the case of the United States v. Curtis, 4 Mason, at p. 244, as follows; “ a party may have a legal right to an exception, which he cannot take in every stage of a cause. The law points out an order in its proceedings, and requires that a party should take his exceptions, and demand his privileges, at such time as general justice and convenience require; otherwise he is deemed to waive them. A party is certainly at liberty to waive any privileges introduced solely for his benefit; and if he is satisfied in going on without them, and sustains no prejudice thereby, there seems no ground to arrest the judgment, or grant a new trial, on this account In that same case, after the jury had possession of it, and the complaint was, that the prisoner had not been furnished with *269 a copy of tbe indictment, it was proposed by tbe Court to withdraw tbe cause, that'the privilege should be allowed, not that it was matter of right in the prisoner, but of discretion in the Court.
Notwithstanding what we have laid down for law as to Miller’s case, to a majority of the Court, (and I am not of that majority on this point,) it appears proper to exercise in behalf of Miller, the high discretion with which the appellate tribunal is vested, in capital cases, and which has been heretofore exercised (vide the State v. Kirby, 1 Strob. 155) to grant a new trial, whenever any misapprehension may have affected the line of a prisoner’s defence, or ample time or opportunity may not have been had by one whose life has been declared forfeited, to meet a material question suddenly started, and working some surprise, and the like. Kirby's case was one affected by this last consideration. It may be, as some of the Court think, that Miller did not press a motion that he might have made, after hearing what befel Winning-ham’s. Under such circumstances, in view of the fact that there is serious division in the Court, and that it is not desirable to separate the fate of the two, who have been partners in the shocking crime imputed to them, and have been tried together, upon such point as has been herein discussed, it is thought best to send both persons before another jury, who, after the prisoners shall have had every legal right which they can claim from the law, and every advantage that can be conceded by a liberal discretion, will, in the end, do that solemn duty which the highest sanctions impose, as well towards the guilty as the innocent.
The motion for a new trial is granted to Winningham as a matter of strict, technical, right, and, upon the considerations set forth, to Miller, ex gratia.
Wardlaw, Whither, and MüNro, JJ., concurred.
*270 O’Neall, J.
In these cases I adhere to the views stated in the report, and the prisoners ought not to have a new trial.
If there was the slightest ground to believe, that either, or both prisoners were believed by any one to be innocent, I would willingly, nay gladly, consent to a new trial, although I believed there was no legal ground for it. But when they stand before me plainly guilty of the most atrocious murder, ever committed in the State, I should feel that I was derelict in my duty if I did not hold them to a strict observance of law.
Neither of them legally demanded a copy of the indictment, and how a proposition to continue can be construed into such a demand, I confess I cannot perceive.

Motion granted.